IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

MARTHA J. HARRIS,                    )
                                     )
    Plaintiff,                       )
                                     )
v.                                   )   No.: 1:13-cv-1100-JDT-egb
                                     )
HARDEMAN COUNTY SHERIFF DEPT.,       )
et al.,                              )
                                     )
    Defendants.                      )

## REPORT AND RECOMMENDATION

Now before this Court is the Motion for Summary Judgment of the Defendants Roger Sturgis and Patrick Perry [D.E. 55]. The *pro se* Plaintiff Martha Harris was granted additional time to respond to this Motion, which she timely filed on January 6, 2015 [D.E. 59]. In this case, the Plaintiff's sole remaining claims against these Defendants are (1) excessive force against Sturgis for his use of a taser on or about November 13, 2013, and (2) excessive force against Perry for allegedly striking her in the breast because she stood up. (See Order of Partial Dismissal, D.E. 7, p. 2-3.)

## RELEVANT BACKGROUND

### Excessive Force Claim - Sturgis

The first of the two incidents underlying this lawsuit occurred when Roger Sturgis, a Hardeman County Sheriff's

Deputy, was dispatched to 539 L. Crisp Road in Hardeman County, Tennessee due to an aggravated burglary complaint. (Decl. of Sturgis, ¶¶ 3,8.) After Sturgis's arrival, the victim indicated that the Plaintiff Martha Harris, also known as Martha Valentine, entered the victim's residence without his permission. This had happened on previous occasions. (Decl. of Sturgis,¶ 9.) Additionally Harris has a history of arrests and convictions for crimes ranging from resisting arrest to assault on an officer. (Decl. bof Sturgis, ¶ 6.) Deputy Sturgis was aware of many of these incidents during his interactions with Harris on November 10, 2012. (Decl. of Sturgis, ¶ 7.) While Sturgis was present, Harris returned to 539 L. Crisp Rd. (Decl. of Sturgis, ¶ 10.)

Plaintiff in her response disputes that she went to Mr. Murphy's residence and stated she was going "to the girl house that night behind his house."

Sturgis asserts that he informed Plaintiff that she could not be on the property. She began to argue with Sturgis and became angry. She began yelling at Sturgis. As she continued to yell and get angry, Sturgis informed her that she was under arrest and that she was going to be taken to jail. (Decl. of Sturgis, ¶ 10.) At that point in time, she continued to act belligerently, and began to walk away from

Sturgis in an evasive manner. (Decl. of Sturgis, ¶ 11, Exhibit A to Decl. of Sturgis.) Sturgis ordered her to stop and she did not. Instead, she continued walking away. (Decl. of Sturgis, ¶ 12.)

Plaintiff disputes that she argued with Sturgis. (Response p. 2).

Sturgis drew his taser, and fired it in dart mode. (Decl. of Sturgis, ¶ 13.) As Sturgis fired the taser, Harris turned around to face him. (Decl. of Sturgis, ¶ 14.) The probes did not establish a good connection and Harris remained standing. (Decl. of Sturgis, ¶ 15.) Harris continued to yell, and refuse to cooperate, and actively resist arrest. (Decl. of Sturgis, ¶ 16.) Sturgis closed the distance between himself and Harris and used to the drive-stun mode on his taser to take Harris to the ground. (Decl. of Sturgis, ¶ 17.) Once Harris was on the ground, Sturgis ordered her to place her hands behind her back. Harris continued to lie on her arms and refused to provide them. Harris continued resisting. (Decl. of Sturgis, ¶ 18.) Sturgis then used the drive-stun function to tase Harris one more time. Harris then placed her hands behind her back. Sturgis handcuffed her, placed her in his patrol vehicle, and transported her to the Hardeman County Jail. (Decl. of Sturgis, ¶ 19.)

Throughout Plaintiff's Response, she denies that she was ever belligerent and uncooperative.

Harris was charged with Aggravated Burglary Criminal Trespassing, and Resisting Arrest for her actions on November 10, 2012. (Decl. of Sturgis, ¶ 20; Exhibit B to Decl. of Sturgis.) Harris pleaded guilty to Resisting Arrest, and Criminal Trespassing. (Decl. of Sturgis, ¶ 20; Exhibit B to Decl. of Sturgis.)

### **Excessive Force Claim - Perry**

The second incident serving as a basis of Plaintiff's lawsuit occurred on December 17, 2012. Captain Leonard Brown and Deputy Patrick Perry conducted a disciplinary board hearing with Harris in the Hardeman County Jail. (Decl. of Perry, ¶ 9.) Perry was aware of many of Harris' previous arrests, convictions, and history at the jail. (Decl. of Perry, ¶ 8.) During the December 2012 disciplinary hearing, Harris was seated in a chair in front of Perry and Captain Brown, who were also in a seated position. (Decl. of Perry, ¶ 10.)

According to Defendants, Harris began to get angry as the Disciplinary Board began and said that she was going to leave. Deputy Perry ordered her to stay. (Decl. of Perry, ¶ 11.) Harris then stood up abruptly and began to move towards the door in an aggressive manner. (Decl. of Perry, ¶ 12.)

Knowing Harris' history of aggressive and violent behavior, Perry knew it was important for her to remain seated and under control. (Decl. of Perry, ¶ 13.)Perry immediately stood up and used a soft, empty handed technique to place Harris back into her chair. (Decl. of Perry, ¶ 14, Exhibit A to Decl. of Perry.) Perry used his left hand, in an open position, to gently strike Harris in the chest and guide her back to her seat. (Decl. of Perry, ¶ 15, Exhibit A to Decl. of Perry.) Perry did not use any other force during the incident. (Decl. of Perry, ¶ 16.) Perry used the minimum amount of force required to make sure that Harris did not become a threat to Perry or others, maintain control of the situation, and restore discipline. (Decl. of Perry, ¶ 17.)

In her Complaint[D.E. 1] Plaintiff claims that Defendant Deputy Perry struck her across the chest/breast causing her to fall back into her chair, this during an administrative hearing in the Hardeman County jail. She provides no date for this incident, but the Court concludes it was during the above-described disciplinary hearing before Captain Brown and Deputy Perry on December 17, 2012. In her Response, Plaintiff simply states that "Perry prepared an incident report of lies" and states that he has lied throughout. (Response p. 6).

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56(a) states in pertinent part that the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). At the same time, these facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In this circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [her] asserted causes of action." *Lord v. Saratoga Capital, Inc.,* 920 F. Supp.

840, 847 (W.D.Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)). "The inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Rudisill* at 601 (citing Anderson, 477 U.S. at 251-52, 106 S. Ct. 2505) (internal quotation marks omitted). "To survive summary judgment, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Pucci v. Nineteenth Dist. Ct.*, 628 F.3d 752, 759-60 (6th Cir. 2010) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)) (internal quotation marks omitted). "While all inferences are drawn in favor of the non-moving party that party still must present some affirmative evidence supporting its position to defeat an otherwise appropriate motion for summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,475 U.S. 574,586 (1986).

42 U.S.C. § 1983 provides that "[e]very person who . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . ."  42 U.S.C. § 1983.  In order to

prevail on such a claim, a plaintiff "must establish that a person acting under color of state law deprived [him or her] of a right secured by the Constitution or laws of the United States." *Dorsey v. Barber*, 517 F.3d 389, 394 (6th Cir. 2008).

The Fourth Amendment protects "[t]he right of people . . . against unreasonable . . . seizures [.]" U.S. Const. amend. IV. Where a plaintiff alleges an unreasonable seizure, "the claim is more properly analyzed under the Fourth Amendment than the Fourteenth Amendment's substantive due process provision, since the former is a more explicit textual source of constitutional protection." *Rodriguez v. Passinault*, 637 F. 3d 675, 680 n. 4 (6th Cir. 2011) (internal quotations marks omitted), *reh'g & reh'g en banc denied* (June 1, 2011).

"A claim of excessive force under the Fourth Amendment requires that a Plaintiff demonstrate that a seizure occurred and, that the force used in effecting the seizure was objectively unreasonable." *Rodriguez*, 637 F.3d at 680 (citing *Graham v. Connor*, 490 U.S. 386, 394-95, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)).

"The reasonableness of the use of a particular level of force is evaluated by balancing the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify

8

the intrusion…" *Bletz v. Gribble*, 641 F.3d 743, 750-51 (6th Cir. 2011) quoting *Tenn. v. Garner*, 471 U.S 1, 8, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985) 9 S Ct. 1694, 85 L. Ed. 2d 1(1985)) (internal quotation marks omitted). In order to determine reasonableness with respect to the use of force, courts are to pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Wheeler v. City of Cleveland*, 415 F. App'x 705, 708 (6th Cir. 2011) quoting *Graham*, 490 U.S. at 396, 109 S. Ct. 1985.

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080, 179 L. Ed. 2d 1149 (2011); *Cockrell v. City of Cincinnati*, 468 Fed. Appx. 491, 493 (6th Cir. 2012).

### Plaintiff's Claim Against Sturgis

Here Deputy Sturgis was dispatched to an aggravated burglary complaint and when he arrived, the victim indicated that Ms. Harris had entered his residence without his

permission. This had happened on previous occasions and Officer Sturgis was familiar with Plaintiff from these and other encounters with her. Ms. Harris then returned to the "crime scene" while Deputy Sturgis was there. The deputy clearly had sufficient probable cause from the property owner's complaint to arrest her for crimes ranging from trespassing to burglary. At the point, after being advised she was under arrest and was going to jail, Plaintiff walked away in an evasive manner.

As described above, it was at this point that Sturgis tased Plaintiff three times. It is undisputed that all three instances of being tased occurred prior to being handcuffed. While Plaintiff disputes that she resisted arrest, and even though all inferences are drawn in favor of the nonmoving party, Plaintiff pled guilty to resisting arrest in state court.

The law is clear that Plaintiff is barred from bringing her claims against Sturgis pursuant to *Heck v. Humphrey*, 512 U.S. 477, 486-487 (U.S. 1994), and its progeny. In *Heck*, the United states Supreme Court explicitly held that "in order to recover damages for . . . harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such

determination, or call into question by a federal court's issuance of a writ of habeas corpus." *Id.* The *Heck* Court gave the following example:

> A state defendant is convicted of and sentenced for the crime of resisting arrest, defined as intentionally preventing a peace officer from effecting a lawful arrest ... He then brings a § 1983 action against the arresting officer, seeking damages for violation of his Fourth Amendment right to be free from unreasonable seizures. In order to prevail in this § 1983 action, he would have to negate an element of the offense of which he has been convicted. Regardless of the state law concerning res judicata, the § 1983 action will not lie.

*Id*. at 487, n. 6. (internal punctuation omitted).

Since *Heck*, the Sixth Circuit Court of Appeals has addressed the applicability of the *Heck* ruling to Tennessee's crime of resisting arrest found in Tenn. Code. Ann. § 39-16-602. *See Matheney v. City of Cookeville*, 461 Fed. Appx. 427, 430(6th Cir. 2012). The *Matheney* Court explicitly found that, "[u]nder Tennessee law, an officer's excessive use of force is a defense to a charge of resisting or evading arrest, thus, a guilty plea and resultant conviction of such a charge necessarily includes a find that the officer did not use excessive force." *Id*. at 430-431 (quoting *Roberts v. Anderson*, 213 F. App'x 420, 427 (6th Cir. 2007). The court noted that for *Heck* to bar a § 1983 claim, success on the claim must necessarily imply the invalidity of

the conviction. Thus, both the § 1983 claim and the conviction must arise out of the same events. *See Cummings v. City of Akron*, 418 F.3d 676, 682–83 (6th Cir. 2005). The *Matheney* Court affirmed the trial court's summary judgment ruling in that case because, under Tennessee law, the *Heck* doctrine barred the plaintiff's attempt to bring an excessive force claim based upon his previous conviction for resisting arrest, which was "inextricably intertwined." *Id*. at 432-433.

Here, it is undisputed that Martha Harris pled guilty to a charge of resisting arrest under Tenn. Cod. Ann. § 39-16-602. Her § 1983 claim and the conviction arise out of the same events. Like in *Matheney,* the alleged excessive force (Sturgis tasing her three times) occurred while resisting arrest. Plaintiff has not demonstrated that the conviction has been invalidated. Because the *Heck* doctrine bars Plaintiff's attempt to bring an excessive force claim based upon her conviction for resisting arrest, the Magistrate Judge recommends Defendants' Motion for Summary Judgment be granted as it pertains to Sturgis.[1]

---

[1] The Magistrate Judge recognizes that the Defendants have proffered a strong qualified immunity argument as well, but finds the *Heck* doctrine directly on point and dispositive. *See Matheney* at 433 ("After holding that the claims were barred by the *Heck* doctrine, the district court was correct to dismiss the complaint. The Supreme Court explained, "[T]he district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, *the complaint must be dismissed* unless the plaintiff can demonstrate that the conviction or

## **Plaintiff's Claim Against Perry**

The remaining claim concerns the December 17, 2012 jail incident that brings Deputy Perry into this suit as a defendant. As noted earlier, Captain Leonard Brown and Deputy Perry were involved as the board members in a disciplinary hearing for Plaintiff Harris. She stood up abruptly and moved toward the door. Knowing her aggressive and violent behavior, Perry "used a soft, empty handed technique to place Harris back into the chair."

In her Complaint, Plaintiff states that Perry "struck her across the breast causing her to fall back into her chair." In her Response, other than stating that Perry is a liar, Plaintiff makes no effort to refute Defendants' Motion for Summary Judgment.

As a convicted prisoner at the time, an excessive force claim is analyzed under the Eighth Amendment's Cruel and Unusual Punishments Clause. *See Cornwell v. Dahlberg*, 963 F.2d 1912, 915 (6th Cir. 1992). "Whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992);

---

sentence has already been invalidated." *Heck,* 512 U.S. at 487, 114 S.Ct. 2364 (emphasis added). Because the claims have been dismissed, there is no reason to reach the issue of qualified immunity.")

13

see also *Lockett v. Suardini*, 526 F.3d 866, 875 (6th Cir. 2008); *Caldwell v. Moore*, 968 F.2d 595, 599-600 (6th Cir. 1992). "[I]n determining whether the use of force was wanton or unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials' and 'any efforts made to temper the severity of a forceful response.'" *Hudson*, 503 U.S. at 7 (*quoting Whitley v. Albers*, 475 U.S. 312, 321 (1986)); *see Caldwell*, 968 F.2d at 601. However, no matter how malevolent the intentions were behind the force applied, the force must still have been of such an excessive nature under the circumstances that it is repugnant to the conscience. *Id*. at 7-9.

Thus, to prevail on an Eighth Amendment excessive force claim, Plaintiff must show that (1) Defendants acted with a "sufficiently culpable state of mind," and (2) the alleged wrongdoing was objectively of such a harmful nature as to establish a Constitutional violation. *See Hudson*, 503 U.S. at 5.

Plaintiff has failed to show either of these elements. The evidence shows that Perry's actions were based upon a good faith effort to maintain discipline. Plaintiff has a history of aggression while being held at the jail, which Perry was aware of. (Def. SOUF 21-23). Perry had ordered Plaintiff to remain

14

seated and that she could not leave the hearing, but in spite of these instructions, Plaintiff stood up abruptly and began to move towards the door. (*Id.* at 25-26). A small amount of objectionably reasonable force was used to keep Plaintiff from leaving the room. "Law enforcement officers are within their right to use objectively reasonable force to obtain compliance from prisoners." *Dawson v. Anderson County*, 566 Fed. Appx. 369,379 (5th Cir. 2014). When an officer places his hand on a suspect or plaintiff's chest to direct or prevent certain movements, this is not a constitutional violation. *See, e.g., Barnett v. Louisville Metro Police Dep't*, 2013 U.S. Dist. LEXIS 183785 at* 38-40 (W.D. Ky. 2013). Plaintiff has provided no evidence of malicious intent to cause harm.

Notably, Plaintiff has also failed to show any evidence that Perry's actions resulted in injury. "An inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) (internal quotations omitted).

For all these reasons, the Magistrate Judge recommends that Defendants' Summary Judgment be granted on this claim as it pertains to Perry.

## Conclusion

Based upon all of the above, this Magistrate Judge recommends that the motion for summary judgment of Defendants

Sturgis and Perry be GRANTED.

Respectfully submitted this 18th day of May, 2015.

>                          **s/Edward G. Bryant**
>                          UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT AND RECOMMENDATIONS MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT AND RECOMMENDATIONS. 28 U.S.C. § 636(b)(1). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**